UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBERT EMANUEL WILKINS, Jr.,

Plaintiff,

v.

ADA COUNTY; ANTHONY R. GEDDES, individually and in his capacity as Ada County Chief Public Defender; COLLIN DANIEL SAYLES, individually and in his capacity as Ada County Deputy Public Defender; ANITA MARIE ELIZABETH MOORE, individually and in her capacity as Ada County Deputy Public Defender; and DOES 1–10,

Defendants.

Case No. 1:26-cv-00565-BLW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Before the Court are pro se Plaintiff Robert Emanual Wilkins, Jr.'s *In Forma Pauperis* Application (Dkt 1); Complaint (Dkt. 2); Motion for Approval of Installment Payment Schedule (Dkt. 3); Motion for Leave to File Electronically (Dkt. 5); and Motion for Appointment of Counsel (Dkt. 6). For the reasons explained below, the Court will deny the *in forma pauperis* application and motion for approval of installment payment schedule, and it will dismiss the complaint

with prejudice. Accordingly, the Court also will deny the motion for leave to file electronically and the motion for appointment of counsel as moot.

### A. *In Forma Pauperis* Application

Any party initiating a civil action in a federal district court is required to pay a filing fee. 28 U.S.C. § 1914. On application, however, a party may proceed *in forma pauperis*, and the Court "may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor." 28 U.S.C. § 1915(a)(1).

To qualify for *in forma pauperis* status, a plaintiff must submit an affidavit that includes a statement of all the assets that he possesses and that indicates that he is unable to pay the required fee. *Id.* An affidavit is sufficient where if it states that the plaintiff, because of his poverty, cannot "pay or give security for the costs" and still be able to provide for himself and dependents the "necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). Additionally, the affidavit must state the facts as to affiant's poverty "with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (internal quotation marks omitted).

The Court has reviewed Wilkins's *in forma pauperis* application and determined that Wilkins does not qualify for *in forma pauperis status*. Wilkins's

application specifies no income or assets. Dkt. 1. But it also reports no expenses for food, clothing, shelter, or any other living expenses. *Id.* Because the Court is unable to determine how Wilkins is meeting basic life necessities, it concludes that the application lacks the required "particularity, definiteness and certainty." *McQuade*, 647 F.2d at 940.

In reaching this decision, the Court notes that this is not the first time that Wilkins has filed a deficient *in forma pauperis* application in this District. *See Wilkins v. City of Meridian*, 2025 WL 1413741 at *1 (D. Idaho 2025). Given Wilkins's failure to follow the Court's previous instructions regarding particularity, definiteness, and certainty, the latest application will be denied.

**B. Proposed Installment Payment Schedule**

The Court will deny Wilkins's request for approval of an installment payment schedule for the same reason. Without complete information regarding Wikins's income and expenses, the Court cannot determine whether an installment payment schedule would be appropriate here.

**C. Sufficiency of Complaint**

The Court is required to screen complaints brought by litigants seeking *in forma pauperis* status. *See* 28 U.S.C. § 1915(e)(2). The Court must dismiss a plaintiff's complaint if it (1) is frivolous or malicious, (2) fails to state a claim

upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). The second ground for dismissal is relevant here.

To state a claim upon which relief can be granted, a complaint must include facts sufficient to show a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). During this initial review, courts generally construe pro se pleadings liberally, giving pro se plaintiffs the benefit of any doubt. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Even so, pro se plaintiffs have the burden of articulating their claims clearly and alleging facts sufficient to support a review of each claim. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). If amending the complaint would remedy the deficiencies, plaintiffs should be notified and provided an opportunity to amend. *See Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Wilkins brings this suit against Ada County, the Ada County Public Defender's Office, and Chief Public Defender Anthony R. Geddes for civil rights violations under 42 U.S.C. § 1983. *See* Dkt. 8 at 14–15. He also sues Deputy Public Defenders Collin Daniel Sayles and Anita Marie Elizabeth Moore, asserting professional negligence. *See id.* at 15–16.

Wilkins's main contention is that his public defenders failed to make certain legal arguments related to the confiscation of his driver's license in a criminal case where Wilkins was convicted of unlawful possession of a firearm. Dkt. 2 at 1–2. According to Wilkins, the initial retention of his driver's license by police violated his Fourth Amendment rights, and he says his attorneys failed to adequately investigate or preserve the issue. *Id.* at 2. Although the Idaho Court of Appeals ultimately vacated Wilkins's conviction on separate grounds, he alleges that his attorneys' failure to pursue the license-retention theory resulted in approximately fifteen months of incarceration, which caused substantial economic, physical, emotional, and reputational injury. *Id.*

### 1. Factual Allegations

Before addressing Wilkins's claims, it is worth recounting his factual allegations in some detail.

In September 2022, a Meridian police officer encountered Wilkins in a restaurant parking lot after responding to a call describing Wilkins's presence as unusual or suspicious. *Id.* at 6. The officer asked for Wilkins's driver's license, which Wilkins produced, and used it to conduct a warrant check that disclosed the existence of an out-of-state warrant. *Id.* Police arrested Wilkins, impounded his

vehicle, and conducted an inventory search that resulted in the discovery of a firearm. *Id.*

The State of Idaho then charged Wilkins with unlawful possession of a firearm under Idaho Code § 18-3316. *Id.* As relevant here, Wilkins maintains that the officer's initial retention of his license constituted an unlawful seizure and that the subsequent warrant discovery and inventory search were fruits of the poisonous tree. *Id.* He also alleges that he gave his public defenders, Sayles and Moore, the facts and authorities supporting this theory but they chose to pursue other suppression arguments. *Id.* at 6–7.

Wilkins says that he alerted Geddes to his objections regarding his representation by Sayles and Moore, but that Geddes failed to conduct a reasonable review. *Id.* at 8. Wilkins also asserts that he reminded his Geddes, Sayles, and Moore of his license-retention theory over several months, but they ultimately rejected the theory without conducting a complete investigation or proper legal analysis. *Id.*

The district court convicted Wilkins on the firearm charge, but the Idaho Court of Appeals vacated the conviction on the ground that the State failed to establish a legitimate community caretaking basis for the impoundment of the vehicle. *Id.* at 9. Wilkins now contends that his attorneys' failure to raise the

license-retention issue resulted in approximately fifteen months of incarceration and related injuries. *Id.* at 9–10.

### 2. Analysis

First, the Court will analyze Wilkins's principal claims against each of the Defendants, beginning with Sayles and Moore. Then it will discuss the claims that Wilkins has identified as "fact-conditional."

#### a. Wilkins's Claims Against Sayles and Moore

Wilkins sues his public defenders, Sayes and Moore, alleging professional negligence. Specifically, Wilkins alleges that Sayles and Moore breached their professional duty to him by failing to conduct an informed legal analysis of the license-retention theory and preserve the issue. *Id.* at 16.

The Idaho Supreme Court has established that a plaintiff asserting legal malpractice must prove: (1) the existence of an attorney-client relationship giving rise to a duty of care; (2) an act or omission by the attorney in breach of that duty; (3) that the breach was the proximate cause of damage to the client; and (4) the fact and extent of the damages alleged. *Rich v. Hepworth Holzer, LLP*, 535 P.3d 1069, 1077 (Idaho 2023). The plaintiff bears the burden of proving each of these elements by a preponderance of the evidence. *Id.*

A plaintiff in a legal malpractice case shoulders an additional burden in that he not only must establish the four tort elements listed above, but must also prove two cases within a single proceeding. *Id.* This "case within a case" doctrine requires the plaintiff to establish a prima facie case for his claim in the underlying action and what the result would have been in that action absent his attorneys' alleged malpractice. *Id.* at 705. In other words, the plaintiff must prove both the primary malpractice case *and* the merits of his claim in the underlying action.

Here, Wilkins would need to show that a suppression motion challenging the initial retention of his driver's license would have succeeded—that is, he would need establish that the retention of his driver's license was an unreasonable seizure under the Fourth Amendment.

"The Fourth Amendment's reasonableness requirement has been held to apply to brief investigatory detentions." *State v. Bishop*, 203 P.3d 1203, 1210 (Idaho 2009) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). To determine whether these seizures are reasonable, courts first ask "whether the officer's action was justified at its inception." *Id.* The level of justification depends on the intrusiveness of the seizure. *Id.*

"Typically, seizures must be based on probable cause to be reasonable." *Bishop*, 203 P.3d at 1210 (citing *Florida v. Royer*, 460 U.S. 491, 499–500 (1983).

But limited investigatory detentions, based on less than probable cause, are permissible when justified by an officer's reasonable articulable suspicion that a person has committed, or is about to commit, a crime. *Id.* "Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts." *Bishop*, 203 P.3d at 1210 (citing *Terry*, 392 U.S. at 21).

The quantity and quality of information necessary to establish reasonable suspicion is less than that necessary to establish probable cause, but reasonable suspicion still requires more than a mere hunch or "inchoate and unparticularized suspicion." *Bishop*, 203 P.3d at 1210 (quoting *Alabama v. White*, 496 U.S. 325, 329 (1990)). Whether an officer possessed reasonable suspicion is evaluated based on the totality of the circumstances known to the officer at or before the time of the stop. *Bishop*, 203 P.3d at 1210 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

To be sure, the Idaho Supreme Court has recognized that the retention of a driver's license by law enforcement officers may constitute a limited seizure for purposes of the Fourth Amendment. *See, e.g.*, *State v. Couch*, 504 P.3d 388, 393 (Idaho 2021); *State v. Godwin*, 826 P.2d 452, 454 (Idaho 1991). But not every retention of a driver's license is unconstitutional. *See id.* at 493–495; *State v. Howell*, 358 P.3d 806, 809 (Idaho Ct. App. 2015).

Here, Wilkins would need to show that the officer lacked reasonable suspicion to retain his license. Having reviewed the complaint, the Court finds that he has not made this showing. Moreover, even if Wilkins did establish that the officer lacked reasonable suspicion, he would also need to prove that a suppression motion would have resulted in the exclusion of the warrant. The mere assertion that "a properly litigated motion would probably have suppressed the downstream evidence" is simply not enough. Dkt. 2 at 11.

Finally, Wilkins would need to overcome the attenuation doctrine, which provides for admissibility when the connection between unconstitutional police conduct and the evidence is sufficiently remote or has been interrupted by some intervening circumstance. As relevant here, the discovery of an outstanding warrant presents a strong, almost overwhelming, case for attenuation. *See Utah v. Strieff*, 579 U.S. 232, 233–34 (2016) ("The doctrine . . . applies . . . where the intervening circumstance is the discovery of a valid, pre-existing, and untainted arrest warrant."); *State v. Cohagan*, 404 P.3d 659, 664 (Idaho 2017) (noting that the discovery of an outstanding warrant is a compelling case for the conclusion that the taint of the original illegality is dissipated) (citation omitted). Wilkins's complaint does not show otherwise.

In sum, Wilkins has failed to clear the hurdle of establishing the "case within a case." The Court therefore concludes that he has not shown professional negligence on the part of Sayles and Moore.

**b. Wilkins's Claims Against Geddes and Ada County**

Wilkins sues Geddes, Ada County's chief public defender, under 42 U.S.C. § 1983. Dkt. 2 at 15. He targets Geddes in his supervisory capacity, asserting a direct causal connection between Geddes's administrative decisions and the failure of Sayles and Moore to investigate and preserve the license-retention issue. *Id.*

Wilkins also sues Ada County under § 1983, alleging that policymakers including Geddes maintained deficient supervisory policies and that these deficiencies deprived him of his Sixth Amendment right to effective assistance counsel. *Id.* at 14–15. Additionally, Wilkins argues that Ada County is liable for its employees' negligence and its own negligence under the Idaho Tort Claims Act (ITCA), Idaho Code § 6-903. *Id.* at 16–17.

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) deprivation of a right secured to him by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

In assessing whether a person acted under color of state law for § 1983 purposes, the Court takes guidance from the leading Supreme Court decisions on state and municipal liability, *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *City of Canton v. Harris*, 489 U.S. 378 (1989).

The Supreme Court held in *Monell* that counties and municipalities are subject to § 1983 liability for constitutional deprivations resulting from application of government custom or policy. 436 U.S. at 690–91. *City of Canton*, meanwhile, stands for the proposition to train subordinate may result in § 1983 liability, but only where the failure amounts to "deliberate indifference" to the rights of persons with whom the subordinates come into contact. 489 U.S. at 388.

The Court must also consider two key decisions considering the § 1983 liability of a public defender, *Polk County v. Dodson*, 454 U.S. 312 (1981), and *Miranda v. Clark County*, 319 F.3d 465 (9th Cir. 2003). In *Polk County*, the Supreme Court held that when a public defender is performing the traditional role of an attorney for a client, she is not a state actor for purposes of 1983. 454 U.S. at 318–19. The case left open the possibility, however, that there might be liability for a public defender performing "administrative and possibly investigative functions." *Id.* at 324–25. After *Polk County*, the Ninth Circuit held in *Miranda* that the head of a county public defender's office qualified as a state actor for §

1983 purposes in implementing policies that allegedly violated defendants' constitutional rights.

Here, Wilkins asserts that *Miranda* permits a § 1983 action based on "administrative resource-allocation, assignment, or training policies that are deliberately indifferent and cause denial of effective counsel." Dkt. 2 at 13. But unlike the plaintiff in Miranda, who alleged a "deliberate pattern and policy of refusing to train lawyers for capital cases," 319 F.3d at 471, Wilkins is unable to point to a specific custom or policy. Furthermore, he has failed show to a "deliberate" or "conscious" choice on the part of Geddes or any other policymaker to disregard his constitutional rights.

Wilkins's vicarious liability and negligence claims against Ada County fall short for similar reasons. "The ITCA establishes that governmental entities are subject to liability for their own negligence or wrongful acts, and those of their employees who were acting within the course and scope of their employment." *Williamson v. Ada Cnty.*, 509 P.3d 1133, 1139 (Idaho 2022) (citing Idaho Code § 6-903). As stated above, Wilkins has not established negligent or wrongful acts on the part of Ada County's employees. Additionally, he has failed to show that Ada County and its administrators breached any duty of their own.

Accordingly, the Court concludes that Wilkins has failed to state a claim against either Geddes or Ada County.

**d. Wilkins's "Fact-Conditional" Claims**

Finally, Wilkins asserts four other causes of action against the Defendants that he describes as "fact-conditional." Dkt. 2 at 17–20. These causes of action are: (1) conspiracy; (2) neglect to prevent; (3) First Amendment retaliation; and (4) breach of fiduciary duty. *Id.*

As to the first, second, and fourth claim, the Court is satisfied that the reasoning above will justify their dismissal. The only claim that warrants further discussion is Wilkins's First Amendment retaliation claim against Geddes.

Wilkins asserts that he was engaged in First Amendment protected activity when he submitted grievances to the Geddes and alerted the trial court to his attorneys' failure to pursue the license-retention issue. Dkt. 2 at 18–19. He further asserts that Geddes threatened withdrawal if Wilkins continued to object to the representation, and that the threat constituted unlawful retaliation. *Id.*

To state a first amendment retaliation claim under § 1983, a plaintiff must show that the alleged retaliation was committed by a person acting under color of state law. *See West*, 487 U.S. at 48. As explained above, the Supreme Court noted in *Polk County* that a public defender does not act under color of state law when

performing a lawyer's tradition functions. 454 U.S.at 325. In fact, *Polk County* specifically described withdrawal decisions as part of a lawyer's traditional functions. *Id.* at 324–325.

Thus, Geddes's alleged threat of withdraw falls within realm of a lawyer's traditional functions, and he was not acting under color of state law for purposes of § 1983 when he delivered this ultimatum. The Court therefore concludes that Wilkins has failed to state a claim upon which relief can be granted, and will dismiss the complaint without leave to amend.

**ORDER**

**IT IS ORDERED that:**

1. Plaintiff's *In Forma Pauperis* Application (Dkt 1) is **DENIED**.
2. Plaintiff's Motion for Approval of Installment Payment Schedule (Dkt. 3) is **DENIED**.
3. Plaintiff's Complaint (Dkt. 2) is **DISMISSED with PREJUDICE**.
4. Plaintiff's Motion for Leave to File Electronically (Dkt. 5) is **DENIED as MOOT.**
5. Plaintiff's Motion for Appointment of Counsel (Dkt. 6) is **DENIED as MOOT.**

DATED: October 13, 2026

B. Lynn Winmill
U.S. District Court Judge